# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **CHRISTOPHER WIDENER,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:13CV00053 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **CITY OF BRISTOL, VIRGINIA, ET AL.,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendants. ) | |

*Charles H. Nave, Roanoke, Virginia, for Plaintiff; Mary F. Russell, Hale, Lyle & Russell, Bristol, Tennessee, for Defendant Sheriff Jack Weisenburger.*

This action under 42 U.S.C. § 1983 arises out of the sexual assault of the plaintiff, Christopher Widener, by a cellmate while he was incarcerated at the Bristol, Virginia, City Jail. In his Third Amended Complaint Widener sues Jack Weisenburger, the Sheriff of the City of Bristol, Virginia, as well as unknown John Does. The Sheriff has filed a Motion for Summary Judgment contending that the plaintiff failed to exhaust the Bristol City Jail's administrative remedies prior to filing his action, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"). The plaintiff has opposed the motion, contending that he exhausted those administrative remedies to the extent that he was able.[1]

---

[1] The Sheriff first filed a Motion to Dismiss to a Second Amended Complaint based in part on the exhaustion issue. I denied the Motion to Dismiss as to the other grounds, but as to the exhaustion issue, treated it as a Motion for Summary Judgment and allowed a further response by the plaintiff. I also granted the plaintiff leave to file a

The Motion for Summary Judgment has been fully briefed and is ripe for decision.[2] For the following reasons, it will be denied.

I

The following facts are taken from the summary judgment record.

While the plaintiff was an inmate at the Bristol City Jail, he was assigned to the same cell as Oadis William White. White had previously committed murder, armed robbery, and three rapes — two against former cellmates. During the night of October 13, 2011, White raped the plaintiff. The plaintiff cried for help and was heard by other inmates, but no deputy or other jail employee responded.

The plaintiff was removed from the cell he shared with White the next night after another inmate told a deputy what had transpired. The plaintiff says that he did not receive any medical treatment, and contends that he filed a timely grievance regarding the rape and his lack of medical treatment on October 16, 2011. The plaintiff gave his grievance form to a uniformed, Caucasian, male

---

Third Amended Complaint. *Widener v. City of Bristol, Va.*, No. 1:13CV00053, 2014 WL 109104, at *2 (W.D. Va. Jan. 13, 2014). Thereafter, the Sheriff filed a separate Motion for Summary Judgment on the exhaustion issue and I permitted discovery limited to that issue.

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

deputy. He did not receive a receipt or copy of his grievance form at the time he filed it or at any other time.

The plaintiff eventually received a blood test to check for sexually transmitted diseases, but was not informed of the results of the test.

On or about October 21, 2011,[3] the plaintiff was released from the Bristol City Jail on bond. He was released prior to the end of the nine days that a jail supervisor had to respond to his grievance form. The plaintiff disclosed his new address during his bond hearing, but did not receive a response to his grievance form in the mail.

The plaintiff was generally familiar with prison grievance procedures from previous incarcerations at other jails. At other jails, he had received carbon copies of grievances he submitted. At the Bristol City Jail, the grievance form was on plain white office paper, and he did not receive a copy.

White was later convicted in state court of forcible sodomy of the plaintiff.

---

[3] The plaintiff gives two different dates as the date when he was released on bond. He states that he "was a resident inmate at the Bristol Virginia Jail from approximately September 16, 2011, until approximately October 21, 2011." (Third Am. Compl. ¶ 7, ECF No. 27.) Later he states that he was released on bond "[o]n or about October 25, 2011." (*Id.* ¶ 26.) It is unclear from the summary judgment record which date is correct. October 21, 2011 would be five days after the plaintiff filed his grievance and four days before the supervisor was required to respond. October 25, 2011 would be nine days after the plaintiff filed his grievance and the final day of the supervisor's response period. As neither date was past the supervisor's deadline to respond, this discrepancy does not change the analysis.

## II

By virtue of the PLRA, before an inmate may bring a claim under § 1983, he or she must fully exhaust all available inmate grievance procedures before filing suit. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). The exhaustion requirement does not impose a heightened pleading standard on an inmate. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 675 (4th Cir. 2005). Rather, failure to exhaust is an affirmative defense, and the burden falls on the defendant to prove the inmate's failure to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The exhaustion requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 739-41 (2001); *Anderson*, 407 F.3d at 677; *Infinite Allah v. Virginia*, No. 2:10CV00075, 2011 WL 251214, at *2 (W.D. Va. Jan. 25, 2011). If the defendant adequately demonstrates an exhaustion defense, the inmate's case is deemed procedurally defective and must be dismissed. *See Woodford*, 548 U.S. at 100-01; *Bock*, 549 U.S. at 221-22.

The Sheriff has the burden of proof in this case to show a failure of exhaustion by the plaintiff. "In order for a defendant to prevail on a summary judgment motion based on an affirmative defense, the defendant must shoulder the burden usually allocated to a plaintiff moving for summary judgment: the defendant must adduce evidence which supports the existence of each element of its affirmative defense, and the evidence must be so powerful that no reasonable

jury would be free to disbelieve it." *Herndon v. Mass. Gen. Life Ins. Co.*, 28 F. Supp. 2d 379, 382 (W.D. Va. 1998) (internal quotation marks and citations omitted).

The administrative remedies available to inmates in the Bristol City Jail are set forth in an inmate handbook provided by the Sheriff's Office. (Maples Aff. Ex. A, ECF No. 13-4.) The system provides for three levels of administrative review of inmate grievances as follows.

First, to start the process, an inmate must request a grievance form, complete it, and return it to a deputy. (*Id.*) The inmate fills out Part I of the form, which asks the inmate to describe his grievance and the action that he wants. (Maples Aff. Ex. B, ECF No. 13-5.) The form is then reviewed by a supervisor, who approves a staff recommendation. (Maples Aff. Ex. A & B.) The supervisor's response is recorded on Part II of the same form that the inmate originally submitted. (Maples Aff. Ex. B.) The form and response must be returned to the inmate within nine days. (Maples Aff. Ex. A & B.)

If the inmate wishes to appeal the supervisor's response, he may appeal to an administrative officer using the same form. (*Id.*) The administrative officer will review and respond to the appeal within nine days. (*Id.*) The administrative officer's response is recorded on Part III of the same form. (Maples Aff. Ex. B.)

If the inmate wishes to appeal the administrative officer's response, the inmate may use the same form to make a final appeal to the Sheriff. The Sheriff will respond either verbally or in writing within a reasonable time. (Maples Aff. Ex. A & B.)

Darline Booher, the Deputy of Records at the Bristol, Virginia, Sheriff's Office, has further explained some aspects of the grievance process. Grievance forms are printed on the front and back of plain white paper. (Booher Dep. 27, ECF No. 34-1.) When a grievance form reaches the supervisor, a copy is made and placed in the inmate's active file. The original copy of the grievance form is always returned to the inmate. (*Id.* at 35.) All grievance forms are stored in inmates' active files while they are incarcerated, and moved to inmates' permanent files when they leave the Bristol City Jail. (*Id.* at 29, 32, 34.) Leaving includes being transferred or released on bond. (*Id.* at 34.) The active and permanent files are both paper files that are retained indefinitely and Booher is not aware of any electronic back-up system. (*Id.* at 38, 48.)

Booher also spoke to the plaintiff's specific situation. She stated that she did not find a grievance form in the plaintiff's permanent paper file, and that there is no other place where a grievance form would have been stored. (*Id.* at 25-26.)

The PLRA's exhaustion requirement obligates an inmate to exhaust only "such administrative remedies as are available" to him. 42 U.S.C. § 1997e(a). As

the Fourth Circuit has recognized, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). A prisoner need only demonstrate that he "utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively." *Id.* (internal quotation marks and citation omitted). Having done so, "a prisoner has exhausted his available remedies, even if prison employees do not respond." *Id.*

The Sheriff argues that because the Bristol City Jail does not have a record of the plaintiff filing a grievance, his Motion for Summary Judgment should be granted.

In contrast, the plaintiff swears that he filed a grievance form, but did not receive a copy or receipt. It is undisputed that he would not normally receive a copy or receipt, or have access to the original until it was returned to him. Therefore, it is not dispositive that the plaintiff has no record that he filed a grievance form.

The plaintiff was released during the nine days in which the supervisor would have had to respond to his grievance. There are several ways that the original grievance form could have been lost or not returned to the plaintiff. The deputy could have failed to give it to the supervisor. The supervisor could have

decided not to respond since the plaintiff had been released. The supervisor could have responded to the grievance, but the form could have been lost during the rearranging of the plaintiff's active and permanent files. The possibilities are numerous particularly since there does not appear to be an administrative procedure for handling a grievance form when an inmate is released while his grievance is pending.

The inmate handbook, on which the Sheriff relies in seeking to demonstrate lack of exhaustion, does not appear to address what inmates should do when they are released while a grievance is pending. The Sheriff states in his response to the plaintiff's interrogatories that "[a]n inmate who is transferred or released before fully exhausting the grievance process would be required to return the grievance appeal by mail (or other delivery) to the Bristol Virginia Jail for the process to be continued and to exhaust his administrative remedies." (Pl.'s Opp'n Mot. Summ. J. Ex. 3 ¶ 6, ECF No. 34-3.) However, there is no indication that inmates are made aware of this requirement. Furthermore, the inmate grievance procedures use the same form for all levels of appeal. Without the original grievance form that he submitted, the plaintiff might not have been able to pursue his grievance through all levels of appeal.

Moreover, the plaintiff's change in location might have rendered the Bristol City Jail's grievance process unavailable to him. *See, e.g.*, *Bradley v. Washington*,

441 F. Supp. 2d 97, 102-03 (D.D.C. 2006) (denying motion to dismiss for lack of exhaustion where inmate was transferred from jail to federal system, and where jail's grievance procedures made no provision for persons no longer contained in jail). *But see King v. Doe*, No. 10-573(JBS/AMD), 2011 WL 4351797, at *4-6 (D. Del. Sept. 16, 2011) (finding lack of exhaustion because plaintiff did not pursue all available levels of appeal, where plaintiff filed a grievance regarding an assault one day after it occurred, but was released three days later after he posted bail). While courts may differ on the impact of release or transfer on an inmate's ability to exhaust grievance procedures, in this case there is no evidence that a procedure existed that the plaintiff knew he should have followed, but did not.

It appears that the plaintiff attempted to fully exhaust the administrative measures available to him before filing this suit. Considering the facts in their totality, the defendant has failed to meet his required burden of proof to succeed on an affirmative exhaustion defense.

III

For the reasons stated, it is **ORDERED** that the defendant's Motion for Summary Judgment (ECF No. 30) is DENIED.

ENTER: July 2, 2014

/s/ James P. Jones
United States District Judge